Charles JACKSON, Plaintiff,

v.

ATLANTIC CITY ELECTRIC CO., a corporation of the State of New Jersey, and/or Gibbs & Hill, Inc., a corporation of the State of New Jersey, Defendants and Third-Party Plaintiffs (Pittsburgh Bridge & Iron Works, a corporation of the State of Pennsylvania, Third-Party Defendant).

Civ. No. 355-55.

United States District Court
D. New Jersey.

July 17, 1956.

Greenstone & Greenstone, Newark, N. J., for plaintiff.

Orlando, Devine & Tomlin, by Samuel P. Orlando, Camden, N. J., for defendants and third-party plaintiffs.

Richards, Capehart, Smith & Wood, by Blaine E. Capehart, Camden, N. J., for third-party defendant.

MADDEN, District Judge.

This is an action for personal injuries allegedly sustained by plaintiff, Charles Jackson, against defendants, Atlantic City Electric Co., hereinafter called Atlantic, and Gibbs & Hill, Inc., hereinafter referred to as Gibbs. Plaintiff's complaint alleges that on January 26, 1954, he was an invitee upon premises of Atlantic as an employee of Pittsburgh Bridge & Iron Works, hereinafter referred to as Pittsburgh, and as a result of the negligence of either Atlantic or Gibbs, or both of them, he was injured. He seeks damages. There is diversity as to all parties.

Atlantic and Gibbs both deny negligence and further allege negligence on the part of the fellow employees of Jackson through Pittsburgh. In addition in a third-party complaint against Pittsburgh, Atlantic alleges a contract for the construction job in question and further alleges that said contract provides for indemnification by Pittsburgh to Atlan-

tic for any liability Atlantic may have to Jackson. Gibbs joins in the third-party action and alleges it was the agent, servant and employee of Atlantic under the terms of the contract.

In an amended answer to the third-party complaint Pittsburgh denies liability, avers that the only liability it has to Jackson is under the Compensation Law of New Jersey, R.S. 34:15–1 et seq., N.J.S.A., and further that this Court has no jurisdiction because the matter is one for arbitration under the terms of the contract and the provision of 9 U.S.C.A. § 3. Pittsburgh has made the present motion for a stay of this proceeding until arbitration is had under the terms of the contract.

The contract, dated July 29, 1952, between Atlantic and Pittsburgh, does provide for arbitration, as follows:

"Article X"

"Arbitration"

"Any controversy or claim arising out of or relating to this Contract, or the breach thereof, shall be settled by arbitration according to the rules then obtaining of the American Arbitration Association or such other rules as it may designate. The American Arbitration Association is hereby authorized to make arrangements for any such arbitration to be held under such rules in Atlantic City, New Jersey, unless the parties hereto agree upon some other location for arbitration.

"This Contract shall be enforceable and judgment upon any award rendered by all or a majority of the arbitrators may be entered in any court having jurisdiction."

Pittsburgh argues that under Section 3 of Title 9 U.S.C.A. that this Court is without jurisdiction and under the authority of Tenney Engineering, Inc., v. United Electric Radio & Machine Workers, 3 Cir., 207 F.2d 450, and Evans v. Hudson Coal Co., 3 Cir., 165 F.2d 970, it must grant the stay until arbitration is completed.

Title 9 U.S.C.A. § 3 provides:

"§ 3. Stay of proceedings where issue therein referable to arbitration

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration. July 30, 1947, c. 392, § 1, 61 Stat. 669."

In the Tenney case, supra, Judge Maris, did say, 207 F.2d at pages 453, 454:

"The collective bargaining agreement here involved, not being excluded by Section 1, undoubtedly is within the purview of Section 3 of title 9. For it is settled that Section 3, being a purely procedural section, applies to all contracts for arbitration which may be involved in suits properly brought in the federal courts and not merely to those maritime transactions or contracts evidencing transactions involving interstate, foreign or territorial commerce the arbitration clauses of which are made valid and enforceable by the substantive provisions of Section 2 of title 9. We, therefore, do not have to decide whether the collective bargaining agreement between the present parties is a contract evidencing a transaction involving interstate commerce within the meaning of Section 2."

And in the Evans case, supra, Chief Judge Biggs, speaking for this Circuit, said, 165 F.2d at page 972:

"If the issues presented by the instant suit are referable to arbitration, the court below, other conditions of the Arbitration Act being met, must grant the stay and hold its hand until arbitration be completed. It is thus, pending arbitration, deprived of jurisdiction of the subject matter."

However, in the opinion of this Court, the Supreme Court took a different view of Section 3 in the matter of Bernhardt v. Polygraphic Company of America, 350 U.S. 198, at page 201, 76 S.Ct. 273, at page 275 (after submission of this matter) when Mr. Justice Douglas said:

"The Court of Appeals went on to hold that in any event § 3 of the Act stands on its own footing. It concluded that while § 2 makes enforceable arbitration agreements in maritime transactions and in transactions involving commerce, § 3 covers all arbitration agreements even though they do not involve maritime transactions or transactions in commerce. We disagree with that reading of the Act. *Sections 1, 2, and 3 are integral parts of a whole. To be sure, § 3 does not repeat the words 'maritime transaction' or 'transaction involving commerce', used in §§ 1 and 2. But §§ 1 and 2 define the field in which Congress was legislating. Since § 3 is a part of the regulatory scheme we can only assume that the 'agreement in writing' for arbitration referred to in § 3 is the kind of agreement which §§ 1 and 2 have brought under federal regulation.* There is no intimation or suggestion in the Committee Reports that §§ 1 and 2 cover a narrower field than § 3. On the contrary, S.Rep. No. 536, 68th Cong., 1st Sess., p. 2, states that § 1 defines the contracts to which 'the bill will be applicable.' And H.R.Rep. No. 96, 68th Cong., 1st Sess., p. 1, states that one foundation of the new regulating measure is 'the Federal control over interstate commerce and over admiralty.'" (Emphasis supplied.)

And further, 350 U.S. at page 202, 76 S.Ct. at page 276:

"Our view, as will be developed, is that § 3, so read, would invade the local law field. We therefore read § 3 narrowly to avoid that issue. Federal Trade Commission v. American Tobacco Co., 264 U.S. 298, 307, 44 S.Ct. 336, 337, 68 L.Ed. 696. *We conclude that the stay provided in § 3 reaches only those contracts covered by §§ 1 and 2.*" (Emphasis supplied.)

And further, 350 U.S. at pages 202 and 203, 76 S.Ct. at page 276:

"We disagree with that conclusion. We deal here with a right to recover that owes its existence to one of the States, not to the United States. The federal court enforces the state-created right by rules of procedure which it has acquired from the Federal Government and which therefore are not identical with those of the state courts. Yet, in spite of that difference in procedure, the federal court enforcing a state-created right in a diversity case is, as we said in Guaranty Trust Co. v. York, 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079, in substance 'only another court of the State.' The federal court therefore may not 'substantially affect the enforcement of the right as given by the State.'"

It, therefore, seems quite clear that this Court should look to the law of New Jersey for the determination of this issue. In New Jersey it appears that arbitration is condoned but in determining whether the parties intended arbitration the contract must be looked to in order to decide if the dispute is covered by a provision for arbitration. Only those disputes which fall within an arbitration provision in the contract, as reasonably construed, will be arbitrable.

In re Pennsylvania-Reading Seashore Lines, 130 N.J.L. 444, 33 A.2d 354; Machine Printers, etc., United States v Merrill Textile Print Works, 12 N.J. Super. 26, 78 A.2d 834; Collingswood Hosiery Mills v. American Federation of Hosiery Workers, 28 N.J.Super. 605, 101 A.2d 372.

As Judge Freund said in the Collingswood case, supra, 28 N.J.Super. at page 610, 101 A.2d at page 374:

> "The question is one of intention, to be ascertained by the same tests that are applied to contracts generally, and whether the parties intended to submit an issue to arbitration calls for determination by the court as to the scope of the collective bargaining agreement."

The provisions of the contract presently before the Court are:

> Any controversy or claim *arising out of or relating to this contract,* or the breach thereof, shall be settled by arbitration according to the rules, etc.

Does this action arise out of or relate to this contract? It hardly seems so. It is a suit grounded in tort alleging common law negligence against the business invitor, owner of property, by the invitee. Certainly this does not seem to be within the contemplation of the parties.

As Justice Donges, in reaching a determination of the intent of the parties in the Pennsylvania-Reading Seashore Lines case, supra, said, 130 N.J.L. at page 446, 33 A.2d at page 355:

> "But the competency of the parties to so stipulate (to arbitrate), as the courts have many times pointed out, is limited to the decision of questions of fact arising under the contract, such as the quantity and quality of materials delivered, whether the work performed meets contract requirements, causes of delay in the performance of the work, etc."

Certainly these illustrations do not fit a negligence case where there not only will be disputed questions of fact but also disputed positions in the law, i. e., whether plaintiff Jackson was a licensee or invitee with different legal rights and also a dispute between parties not party to the contract, namely, plaintiff Jackson and defendant Gibbs & Hill, the contract being between Atlantic on the one hand and Pittsburgh on the other.

It, therefore, seems clear that such an action was not within the contemplation or intention of the parties when they provided for arbitration of certain disputes. Consequently, the stay applied for will be denied. Counsel will prepare an appropriate order.