640 A.2d 251

**CONTRACT CONSTRUCTION, INC.**

**v.**

**POWER TECHNOLOGY CENTER LIMITED PARTNERSHIP, et al.**

**No. 1313, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

April 29, 1994.

174

David B. Hamilton (Robert W. Biddle and Ober, Kaler, Grimes & Shriver, on the brief), Baltimore, for appellant.

Barron L. Stroud, Jr. (James R. Eyler and Miles & Stockbridge, on the brief), Baltimore, for appellees.

Argued before BISHOP, ALPERT and WENNER, JJ.

WENNER, Judge.

In this appeal, appellant is Contract Construction, Inc. (CCI). Appellees are Power Technology Center Limited Partnership (PTCLP), Cohen Power Corporation (Cohen), and Powertek Realty Corporation (PRC). Cohen and PRC are general partners of PTCLP. For clarity's sake, we will refer collectively to appellees as "Powertech."

In November of 1989, Powertech entered into a contract (the Contract) with CCI. CCI was to be general contractor for an office building and parking garage, known as Power Technology Center. Glen Andrew Fahy (Fahy), an employee of a subcontractor, was killed in an accident during construction of Power Technology Center. Fahy's daughter and estate (the Fahys) filed a complaint against CCI, Powertech, and others alleging negligence and strict liability (the primary suit). The complaint against CCI was dismissed because it was Fahy's statutory employer and thus immune from suit under the Maryland Workers' Compensation Act. Maryland Code (1991), § 9–509(a) of the Labor and Employment Article.

Upon CCI's dismissal, Powertech filed a third-party complaint against CCI claiming indemnification and breach of contract. In response, CCI moved to Compel Arbitration and Stay Powertech's Third Party Complaint, contending that the Contract required arbitration. This appeal followed the Circuit Court for Prince George's County's denial of CCI's motion. The sole issue presented on appeal is whether the circuit court erred in holding that Powertech's third party-claims were not covered by the Contract's arbitration clause.

Concluding that the circuit court erred, we shall reverse its decision and remand this case with instructions to order arbitration.[1]

---

1. Although the circuit court summarily denied CCI's motion to compel arbitration, the record before us does not contain a transcript of the hearing on that motion. We thus have not had the benefit of reviewing the circuit court's reasoning.

*Discussion*

## I.

The Maryland Uniform Arbitration Act (the Act), Maryland Code (1973, 1989 Repl.Vol.), §§ 3–201 to 3–234 of the Courts and Judicial Proceedings Article (CJP), embodies Maryland's policy of favoring arbitration. *Crown Oil & Wax Co. v. Glen Construction Co.*, 320 Md. 546, 558, 578 A.2d 1184 (1990); *Gold Coast Mall v. Larmar Corp.*, 298 Md. 96, 103, 468 A.2d 91 (1983); *Bel Pre Medical Center, Inc. v. Frederick Contractors, Inc.*, 21 Md.App. 307, 320, 320 A.2d 558 (1974), *modified on other grounds*, 274 Md. 307, 334 A.2d 526 (1975). Although the parties' intention controls, the use of a broad, all encompassing arbitration clause ordinarily leads to the presumption that the parties intended the arbitration of all disputes. *Crown Oil*, 320 Md. at 558, 578 A.2d 1184. Hence, if the arbitration clause calls for the arbitration of any and all disputes arising out of the contract, all issues are arbitrable unless expressly excluded. *Id.* at 560, 578 A.2d 1184; *Gold Coast*, 298 Md. at 104, 468 A.2d 91; *Bel Pre*, 21 Md.App. at 321, 320 A.2d 558.

In suits to compel or stay arbitration, the circuit court is confined to resolve but one issue: "Is there an agreement to arbitrate the subject matter of a particular dispute." *Crown Oil*, 320 Md. at 559, 578 A.2d 1184 (quoting *Gold Coast*, 298 Md. at 103–04, 468 A.2d 91). There are three categories of disputes involving the scope of an arbitration clause. *Id.* First, if the language of the arbitration clause is clear and the dispute in question falls clearly within the provision, arbitration must be compelled. *Id.* at 560, 578 A.2d 1184. Second, if the dispute sought to be arbitrated is clearly outside the scope of the arbitration clause, arbitration must be denied. *Id.* Third, if the language of the arbitration clause is unclear with respect to whether the dispute is within the scope of the arbitration clause, the issue of arbitrability is for the arbitrators to decide, and arbitration must be compelled. *Id.* Thus, it is only when the matter in dispute is unequivocally outside the scope of the arbitration clause that a motion to

compel arbitration may be denied and litigation be allowed to proceed.

## II.

Powertech's third-party claims against CCI are derived from the Contract. The Contract is composed of the Agreement Between Owner and General Contractor (the Agreement); the General Conditions of the Contract for Construction, AIA Document A201, Fourteenth Edition, 1987 (the General Conditions); and various specifications and drawings (collectively, the Contract Documents). The General Conditions consist of a form document promulgated by the American Institute of Architects (AIA), containing standardized provisions designed to govern the construction process and the relationship between the Owner, Contractor, and Architect. According to Section 1.1 of the Agreement, the General Conditions "are as fully a part of the contract as if attached to this Agreement or repeated herein." Subparagraph 1.2.3 of the General Conditions provides that "the Contract Documents are complementary, and what is required by one shall be as binding as if required by all." On the other hand, Section 1.1 provides that if anything in the Contract Documents is inconsistent with the Agreement, the Agreement governs.

Article 10 of the General Conditions is captioned "Protection of Persons and Property." Subparagraph 10.1.1 provides that "[t]he Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the Contract." Subparagraph 10.2.1 requires the Contractor to "take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss" to "employees on the Work and other persons who may be affected thereby."

Indemnification clauses are contained in both the Agreement and the General Conditions. Section 16.7 of the Agreement provides:

The Owner and the Contractor shall indemnify and hold harmless each other and their agents and employees from

and against any and all claims, damages, losses and expenses, including attorney's fees, in respect of any claims, damages, loss or expense attributable to bodily injury (including death) or property damage that is caused by a negligent act or omission of the other party or any of the other party's agents, subcontractors or employees.

Subparagraph 3.18.1 of the General Conditions provides:

To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Owner, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including loss of use resulting therefrom, but only to the extent caused in whole or in part by negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Paragraph 3.18.

Paragraphs 4.3 and 4.4 of the General Conditions govern claims, disputes, and their resolution. The provisions contained in paragraphs 4.3 and 4.4 pertinent to the resolution of the matter *sub judice* are:

4.3.1 A Claim is a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. Claims must be made by

written notice. The responsibility to substantiate Claims shall rest with the party making the Claim.

4.3.2 Claims, including those alleging an error or omission by the Architect, shall be referred initially to the Architect for action as provided in Paragraph 4.4. A decision by the Architect, as provided in Subparagraph 4.4.4 shall be required as a condition precedent to arbitration or litigation of a Claim between the Contractor and Owner as to all such matters arising prior to the date final payment is due, regardless of (1) whether such matters relate to execution and progress of the Work or (2) the extent to which the Work has been completed. The decision by the Architect in response to a Claim shall not be a condition precedent to arbitration or litigation in the event (1) the position of the Architect is vacant, (2) the Architect has not received evidence or has failed to render a decision within agreed time limits, (3) the Architect has failed to take action required under Subparagraph 4.4.4 within 30 days after the Claim is made, (4) 45 days have passed after the Claim has been referred to the Architect or (5) the claim relates to a mechanic's lien.

4.3.3 Claims by either party must be made within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later. Claims must be made by written notice. . . .

4.3.5 The making of final payment shall constitute a waiver of Claims by the Owner except those arising from:

.1 liens, Claims, security interests or encumbrances arising out of the Contract and unsettled;

.2 failure of the Work to comply with the requirements of the Contract Documents; or

.3 terms of special warranties required by the Contract Documents.

4.4.4 If a Claim has not been resolved after consideration of the foregoing and of further evidence presented by the parties or requested by the Architect, the Architect will

notify the parties in writing that the Architect's decision will be made within seven days, which decision shall be final and binding on the parties but subject to arbitration. Upon expiration of such time period, the Architect will render to the parties the Architect's written decision relative to the Claim, including any change in the Contract Sum or Contract Time or both. If there is a surety and there appears to be a possibility of a Contractor's default, the Architect may, but is not obligated to, notify the surety and request the surety's assistance in resolving the controversy.

Paragraph 4.5 governs arbitration, and subparagraph 4.5.1 establishes when arbitration is required:

Any controversy or Claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof, except controversies or Claims relating to aesthetic effect and except those waived as provided for in Subparagraph 4.3.5. Such controversies or Claims upon which the Architect has given notice and rendered a decision as provided in Subparagraph 4.4.4 shall be subject to arbitration upon written demand of either party. Arbitration may be commenced when 45 days have passed after a Claim has been referred to the Architect as provided in Paragraph 4.3 and no decision has been rendered.

### III.

 Since subparagraph 4.5.1 is "a broad, all encompassing arbitration clause,"[2] we must presume that "all issues are arbitrable unless expressly and specifically excluded." *Crown Oil, supra,* 320 Md. at 560, 578 A.2d 1184. Powertech's third-

---

2. *See NSC Contractors, Inc. v. Borders,* 317 Md. 394, 403–04, 564 A.2d 408 (1989) and *Hilliard & Bartko Joint Venture v. Fedco,* 309 Md. 147, 151 n. 2, 156, 522 A.2d 961 (1987) (each characterizing the standard AIA arbitration clause as "broad").

party claims for indemnification and breach of contract clearly "aris[e] out of" and are "related to" the "Contract, or the breach thereof." After labeling its claims "Breach of Contract" and "Contractual Indemnification," Powertech cites Section 16.7 of the Agreement as the basis of its claim for indemnification, and Section 10.2 of the Agreement as the basis of its claim for breach of contract. Even if Powertech's claim for indemnification were tort-based rather than contract-based, *see, e.g., Council of Co–Owners Atlantis Condominium v. Whitting–Turner Contracting Co.*, 308 Md. 18, 41, 517 A.2d 336 (1986); *Board of Trustees of Baltimore County Community College v. RTKL Associates*, 80 Md.App. 45, 55–56, 559 A.2d 805, *cert. granted,* 317 Md. 609, 565 A.2d 1033 (1989), *cert. dismissed,* 319 Md. 274, 572 A.2d 167 (1990), it would be based upon CCI's failure to keep the worksite safe, and thus have arisen from Powertech's relationship with CCI, created by the Contract. *See Petroleum Helicopters, Inc. v. Boeing–Vertol Co.*, 478 F.Supp. 84, 85–86 (E.D.La.) ("[P]rovisions [to the effect that claims "arising out of or relating to" an agreement are to be arbitrated] do not require that the specific legal rights being asserted be created by the Agreements, but rather simply that those legal rights relate to the underlying relationships between the parties established by the Agreements."), *aff'd,* 606 F.2d 114 (5th Cir.1979).

Powertech does not direct us to, nor have we found any provision in the contract expressly excluding from arbitration a claim for indemnification. To the contrary, Powertech contends that this case "falls squarely within the parameters of *Jackson v. Atlantic City Electric Co.*, 144 F.Supp. 551 (D.N.J. 1956)," and urges us to follow the *Jackson* court's determination that "a suit grounded in tort alleging common law negligence against the business invitor, owner of the property, by the invitee[, contractor's employee] . . . was not within the contemplation or intention of the parties when they provided for arbitration of certain disputes." *Id.* at 554. Although the arbitration clause, parties, and procedural posture of *Jackson* are nearly identical to those in the case *sub judice*, we believe

that the court's reasoning in *Jackson* is flawed, and decline to follow it.

Jackson was an employee of Pittsburgh Bridge & Iron Works (Pittsburgh), and was injured while working on a construction project on Atlantic City Electric Co. (Atlantic) premises. Jackson filed a complaint against Atlantic and Gibbs & Hill, Inc. (Gibbs),[3] asserting that he was an invitee on Atlantic's premises and that his injuries were the result of Atlantic and/or Gibbs's negligence. *Id.* at 551. Atlantic then filed a third-party complaint against Pittsburgh, asserting that the construction contract between them required Pittsburgh to indemnify Atlantic for any liability to Jackson. *Id.* at 551–52. Gibbs joined in the third-party action, asserting that it was "the agent, servant and employee of Atlantic under the terms of the contract." *Id.* at 552. Pittsburgh responded by denying liability and averring that the court was without jurisdiction because the contract required arbitration. *Id.*

The *Jackson* court looked to New Jersey law, under which "it appear[ed] that arbitration is condoned but in determining whether the parties intended arbitration the contract must be looked to.... Only those disputes which fall within an arbitration provision in the contract, as reasonably construed, will be arbitrable." *Id.* at 553. The arbitration clause in the Atlantic and Pittsburgh contract provided that "[a]ny controversy or claim arising out of or relating to this Contract, or the breach thereof, shall be settled by arbitration according to the rules then obtaining of the American Arbitration Association...." *Id.* In determining that the action did not arise out of or relate to the contract, the *Jackson* court first noted that, under New Jersey law, the competency of the parties to arbitrate was limited to questions of fact arising under the contract, *id.* at 554, and then concluded:

> Certainly these illustrations [of permissible factfinding in arbitration] do not fit a negligence case where there not

---

3. Gibbs & Hill, Inc.'s relationship to the construction project is not specified, but, from the information provided us, we assume that Gibbs was the project's architect.

only will be disputed questions of fact but also disputed positions in the law, i.e., whether plaintiff Jackson was a licensee or invitee with different legal rights and also a dispute between parties not party to the contract, namely, plaintiff Jackson and defendant Gibbs & Hill, the contract being between Atlantic on the one hand and Pittsburgh on the other.

*Id.* Concluding that it seemed clear that such an action was not intended to be covered by the arbitration clause, the court denied Pittsburgh's motion to stay. *Id.*

### IV.

 We begin our analysis of *Jackson* by noting that New Jersey's standard for determining arbitrability, as explicated by the *Jackson* court, is stricter than that of Maryland. In New Jersey, only those disputes falling within the arbitration clause are arbitrable, while in Maryland only those disputes clearly outside the scope of the arbitration clause are not arbitrable. *See Crown Oil, supra,* 320 Md. at 560, 578 A.2d 1184; *Gold Coast, supra,* 298 Md. at 104–05, 468 A.2d 91; *Bel Pre, supra,* 21 Md.App. at 321, 320 A.2d 558.[4] Moreover, Maryland does not restrict arbitration to issues of fact. *Cf. Southern Maryland Hospital Center v. Crough,* 48 Md.App. 401, 407, 427 A.2d 1051, *cert. denied,* 290 Md. 721 (1981) ("[A] mere error in the laws or failure on the part of the arbitrators to understand or apply the law will not justify judicial intervention....."). Although significant, these differences do not constitute our reason for declining to follow *Jackson.*

---

4. We note that Powertech's characterization of Maryland law more closely follows that of New Jersey:

> Where the issues sought to be arbitrated are beyond the scope of the asserted arbitration clause, there is no agreement to arbitrate, and arbitration should not be compelled. Conversely, only where it is plain that the dispute falls within the terms of the arbitration agreement should arbitration be compelled.

Although Powertech cites *Bel Pre* for this statement, it fails to acknowledge the third category established by *Bel Pre:* if the arbitration clause is ambiguous, the issue of arbitrability is submitted to arbitration. *See Bel Pre,* 21 Md.App. at 321, 320 A.2d 558.

Instead, we do not agree with the *Jackson* court's focus upon Jackson's tort claim rather than upon Atlantic's third-party claim. The *Jackson* court failed to recognize that, though related, the two actions were distinct. Atlantic's and Gibbs's claims for indemnification from Pittsburgh did not involve "disputed positions in the law" or "parties not party to the contract." [5] The third-party claims were grounded solely on the Atlantic and Pittsburgh contract and thus "arose out of" the contract and were clearly encompassed by the arbitration provision. In our view, the *Jackson* court erred in denying Pittsburgh's motion for a stay pending arbitration.

The appropriate focus in a situation such as that before the *Jackson* court, and before us in the case *sub judice*, is the subject matter of the dispute between the parties to the contract. When the issue is arbitrable, arbitration may not be denied,[6] *see* CJP § 3–207(c) ("If the court determines that the [arbitration] agreement exists, it *shall* order arbitration.") (emphasis added), even though arbitration may result in duplicative proceedings and the potential for inconsistent factfinding. *Charles J. Frank, Inc. v. Associated Jewish Charities of Baltimore, Inc.*, 294 Md. 443, 459, 450 A.2d 1304 (1982). As the *Frank* court put it: "The Legislature ... contemplated duplicative multiple actions and established as a matter of legislative policy that it is inequitable to enjoin arbitration to prevent such actions." *Id.* at 459 n. 4, 450 A.2d 1304; *see* CJP § 3–209(b) ("If the issue subject to arbitration is severable, the court may order the stay with respect to this issue only.").

---

5. Gibbs asserted rights under the contract through Atlantic, and claimed no independent right to indemnification from Pittsburgh.

6. The only exceptions that we have found were based upon a finding that a nonparty to the contract would be prejudiced by enforcement of the arbitration provisions. *See Ivey v. Baronia Shipping Co.*, 741 F.Supp. 130, 131 (E.D.Mich.1989); *McSwegan v. U.S. Lines, Inc.*, 688 F.Supp. 867, 871–72 (S.D.N.Y.1988). Both of these cases involved impleader of third parties pursuant to Federal Rule of Civil Procedure 14(c), which applies only to admiralty cases. We do not speculate as to whether such prejudice could ever occur under Maryland law.

 It is obvious that Powertech's third-party claims against CCI are severable from the Fahys's primary claims for negligence and strict liability. Further, as CCI is not directly liable to the Fahys under the Maryland Workers' Compensation Act, submitting Powertech's third-party claims to arbitration cannot prejudice the Fahys. Even if CCI were independently liable to the Fahys, such liability would be distinct from any liability CCI might have to Powertech for indemnification or breach of contract.

The Contract's arbitration clause requires "*[a]ny* controversy or Claim arising out of or related to the Contract" to be settled by arbitration. Both the Agreement and the General Conditions contain indemnification clauses encompassing claims, damage, loss and expense attributable to bodily injury. Thus, the Contract clearly contemplates indemnification claims arising out of complaints filed by third parties injured on the construction site. Yet, neither the Agreement nor the General Conditions exempt claims for indemnification from arbitration. In sum, we conclude that Powertech's third-party claims are subject to arbitration, and arbitration should not have been denied.

## V.

 Powertech contends that the Contract's arbitration clause covers only disputes concerning "the work" to be completed under the contract. In the first place, it appears that, in reaching its conclusion, Powertech has relied upon *Jackson's* prohibition against arbitrating questions of law. We have found no similar Maryland case requiring such a narrow interpretation of an arbitration clause.

In the second place, we point out to Powertech that subparagraph 1.1.3 of the General Conditions defines the term "Work" as "the construction and services required by the Contract Documents." Throughout the General Conditions, the term "Work" addresses the performance of construction and services. For instance, Subparagraphs 3.2.3 and 3.7.4 read:

3.2.3 The Contractor shall perform the Work in accordance with the Contract Documents and submittals approved pursuant to Paragraph 3.12.

3.7.4 If the Contractor performs Work knowing it to be contrary to laws, statutes, ordinances, building codes, and rules and regulations without such notice to the Architect and Owner, the Contractor shall assume full responsibility for such Work and shall bear the attributable costs.

Thus, had the parties intended to limit arbitration to disputes over the performance of the "Work" required by the Contract, the arbitration clause would provide "[a]ny controversy or Claim regarding the Work ..." rather than "[a]ny controversy or Claim arising out of or related to the Contract, or the breach thereof shall be settled by arbitration...."

## VI.

■■■ Powertech finally contends that, even if its third-party claims are arbitrable, CCI has waived its right to arbitration by failing to first submit its claim to the architect for resolution. *See Stauffer Construction Co. v. Board of Education of Montgomery County,* 54 Md.App. 658, 460 A.2d 609, *cert. denied,* 297 Md. 108 (1983). It argues:

> Under the Contract, demand for arbitration cannot be made without first submitting the claim to the architect for resolution, and only then upon the architect's rendering or failure to render a final decision. [General Conditions ¶¶ 4.4, 4.5].... Moreover, the Contract requires that all claims (including those which may ultimately be submitted to arbitration) be made by written notice within the later of 21 days after the occurrence giving rise to the event or 21 days after the claimant first recognizes the condition giving rise to the event, and requires that notice of demand for arbitration "shall be filed in writing with the other party to the agreement ... and with the American Arbitration Association, and a copy shall be filed with the Architect." [General Conditions ¶¶ 4.5.1, 4.5.2].

The Plaintiffs' Second Amended Complaint was filed March 5, 1993, and Respondents' Third–Party Complaint was field thereafter on April 8, 1993. The Petitioner's first "demand" for arbitration did not come until May 11, 1993 in the form of a letter addressed to Powertech's counsel. CCI's Petition for Arbitration and to Stay Powertech's Third–Party Complaint was filed on May 21, 1993.

As a preliminary matter, there is no evidence, nor has CCI asserted that its claims were first submitted to the architect for resolution. Moreover, CCI failed to provide appropriate notice of any asserted claim within 21 days of any event giving rise to CCI's claims, whether it be the filing of the Second Amended Complaint or Third–Party Complaint, and notice of demand for arbitration was not filed according to procedure.

As we see it, Powertech assumes incorrectly that CCI's demand for arbitration of Powertech's third-party claims is itself a "claim."

Subparagraph 4.3.1 of the General Conditions defines a claim to include "a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract" and "other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract." In short, CCI's demand for arbitration is not a claim. Conversely, Powertech has made a claim against CCI; CCI has not made a claim against Powertech. In demanding arbitration, CCI has simply asserted that arbitration, not litigation, is the proper forum for resolving Powertech's claims. CCI has not waived its right to arbitration.

## VII.

As we have noted, ordering arbitration may result in duplicative multiple actions. We also observe that the issues to be arbitrated in the case *sub judice* are wholly derivative of the claims being litigated. The further disposition of these pro-

ceedings we deem to be a matter initially within the province of the trial court.

**JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY WITH INSTRUCTIONS TO ORDER ARBITRATION AND FOR FURTHER PROCEEDINGS.**

**COSTS TO BE PAID BY APPELLEE.**