JAMES R. EYLER, Judge.
 

 This case arises out of an employment dispute between NAHB Research Center, Inc. (the Research Center), appellee, and three former employees: Mark Nowak, David Dacquisto, and Larry Zarker, appellants. On December 16, 2002, after the Research Center commenced binding arbitration proceedings against appellants pursuant to a clause in their employment contracts, appellants filed a petition to stay arbitration proceedings in the Circuit Court for Prince George’s County.
 
 *27
 
 On June 12, 2003, the court denied appellant’s petition and subsequently denied their motion to alter or amend judgment.
 

 For the reasons discussed herein, we hold that the employment contracts contain valid and binding mutual agreements to arbitrate future disputes arising out of the employment contracts. Further, we hold that the Research Center’s claims presented for arbitration fall within the scope of this arbitration clause. Finally, the circuit court did not err in denying the contract defenses asserted by appellants in support of their contention that the arbitration clause is unenforceable, and we, therefore, affirm the judgment of the circuit court.
 

 Factual Background
 

 The Research Center is a wholly owned subsidiary of the National Association of Home Builders of the United States of America (NAHB). Appellants were each long-term employees of the Research Center, working as corporate officers and administrators.
 
 [1]
 
 Prior to 2002, none of the appellants had written employment contracts.
 

 In 2001, appellants requested written contracts. In 2002, the Research Center presented each appellant with an employment contract, which, if signed, was to be backdated to January 1, 2002. These contracts were identical, with the exception of the rate of compensation and the description of position.
 
 [2]
 
 Appellants signed their respective contracts without varying or negotiating the terms.
 

 The Contract contained the following arbitration clause:
 

 
 *28
 
 12. Arbitration. The parties agree that they will use their best efforts to amicably resolve any dispute arising out of or relating to this Agreement. Any controversy, claim or dispute that cannot be so resolved shall be settled by final binding arbitration in accordance with the rules of the American Arbitration Association and judgment upon the award rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof. Any such arbitration shall be conducted in the State of Maryland, or such other place as may be mutually agreed upon by the parties. Within fifteen (15) days after the commencement of the arbitration, each party shall select one person to act as arbitrator, and the two arbitrators so selected shall select a third arbitrator within ten (10) days of their appointment. Each party shall bear its own costs and expenses and an equal share of the arbitrator’s expenses and the administrative fees of arbitration.
 

 Effectively, this clause required binding arbitration for all disagreements arising out of or relating to the Contract of employment. Athough the Contract prohibited competing with the Research Center while appellants were employed by the company, there was no such non-compete provision effective upon the termination of appellants’ employment.
 

 While NAHB is a nonprofit trade association, the Research Center is a for-profit entity. In early 2001, NAHB became concerned about the financial consequences resulting from the Research Center’s rising profits. Ater seeking advice from attorneys and independent consultants, the Research Center decided to enter into a licensing/royalty agreement with NAHB, providing for payment by the Research Center of a five percent licensing fee for use of, among other things, NAHB’s name and logo. Appellants disapproved of the concept of a licensing/ royalty agreement between the companies.
 

 While still employed by the Research Center, appellants, along with Liza Bowles, then-President of the Research Center, formed their own company, The Newport Partners, L.L.C. (Newport Partners). Appellee alleges that appellants planned
 
 *29
 
 to divert Research Center business to Newport Partners. According to appellee, appellants conspired with Ms. Bowles, whereby Ms. Bowles would terminate them in a fashion entitling them to severance payments, pursuant to a clause in the Contract which provides:
 

 5. Terms and Termination
 

 B. This agreement and the Employee’s employment may be terminated by [The Research Center] at its discretion at any time, provided that in such case, Employee shall be paid a lump-sum severance payment equal to the Employee’s currently weekly base salary multiplied by two (2) weeks for every year, or fraction thereof, that the Employee has been employed by the Company up to a maximum of fifty two (52) weeks. In addition, [The Research Center] shall pay the Employee for any unused vacation days and shall make such contribution on the Employee’s benefit as are required under the retirement plans.
 

 On September 9, 2002, Ms. Bowles terminated appellants’ employment relationship, without cause, and issued severance payments in accordance with the above provision in the Contract.
 
 [3]
 

 According to appellee, on September 11, 2002, upon discovering appellants’ scheme, a special meeting of the Research Center Board of Directors was convened, at which the Directors voted to rescind the termination of appellants. The Research Center then sent letters to appellants informing them that they had been improperly terminated, that such termination was rescinded and, as a result, that they were still employed by the Research Center. Appellants were directed to return to work and ordered to repay the severance they had each received, or risk being terminated for cause. Appellants were not consulted prior to the decision to rescind their termination.
 

 
 *30
 
 On October 21, 2002, when appellants had not returned to work or repaid their severance, the Research Center terminated the employment of each of the appellants “for cause.” The Research Center rested its authority to make this decision on the terms of the Contract.
 

 On or about November 18, 2002, the Research Center commenced binding arbitration proceedings against each appellant before the American Arbitration Association (AAA), attempting to enforce paragraph 12 of the Contract. The Research Center sought $300,000 in damages from each appellant, asserting a claim with counts that contained the following headings: (1) civil conspiracy, for misleading the Board of Directors, obtaining wrongful termination, and therefore wrongful severance, and engaging in conduct to fund a competing company in contravention of appellants’ fiduciary duties to the Research Center; (2) breach of contract, for failing to comply with the provisions of the Contract; (3) breach of fiduciary duty of loyalty, for engaging in conspiracy and diverting business to another company while employed by the Research Center; and (4) unjust enrichment/quantum meruit, for wrongfully obtaining severance and failing to repay it. Appellants sought to have the three arbitrations consolidated, but the Research Center rejected their proposal.
 
 [4]
 

 On December 16, 2002, appellants filed a petition in circuit court, seeking to stay the arbitration proceedings, along with a Request for Production of Documents and Interrogatories. Appellants contended that appellee’s claims were not subject
 
 *31
 
 to arbitration and argued that: (1) following their September 9, 2002 termination, the Contract no longer existed; (2) even if the Contract still existed, the claims asserted by the Research Center were outside the scope of the arbitration clause; (3) the Research Center acted illegally and without good faith; (4) the arbitration clause is a contract of adhesion and is unconscionable; (5) the arbitration clause fails to comply with Maryland Code (1974, 2002 Repl. Vol), § 3-206 of the Courts and Judicial Proceedings Article; (6) the arbitration clause fails to carry out its purpose, namely to be more efficient and less expensive than court proceedings; (7) the arbitration clause should fail for want of consideration; and (8) the purpose of the arbitration proceedings was to harass and interfere with the livelihoods of appellants.
 

 In response to appellants’ petition, the Research Center filed a motion to dismiss and filed its own petition to compel arbitration. In addition, the Research Center asked the circuit court to deny appellant’s discovery requests, arguing that the discovery was inappropriate. Appellants claimed that discovery was necessary to determine issues of enforceability and validity of the arbitration clause. Appellants thereafter filed a motion to dismiss the Research Center’s motion to compel arbitration.
 

 On the day the Research Center’s discovery was due, appellants filed a motion for sanctions, based on the Research Center’s alleged failure to provide discovery responses. The Research Center opposed appellants’ motion for sanctions.
 

 On May 9, 2003, a hearing was held on all open motions.
 
 [5]
 
 On June 12, 2003, the court issued an opinion and order denying appellants’ petition to stay arbitration proceedings, noting that the termination of an employment contract does
 
 *32
 
 not necessarily terminate a provision for arbitration. The court rejected appellants’ arguments that the arbitration agreement did not exist and/or could not be enforced and ordered the parties to submit to binding arbitration. In effect, the order granted the Research Center’s motion to compel arbitration and disposed of the motions to dismiss.
 

 Thereafter, appellants argued in a motion to alter or amend judgment that the court’s order was defective and that the court should have granted an evidentiary hearing and permitted discovery to comply with due process requirements. This motion was denied on July 14, 2003.
 

 On July 16, 2003, appellants appealed to this Court.
 

 Contentions of the Parties
 

 On appeal, appellants make several arguments, which we shall paraphrase and condense. First, appellants contend that the circuit court erred in finding that an agreement to arbitrate existed and, specifically, that it applied to conduct that occurred after the purported termination of appellants’ employment. Second, the court erred in concluding that appellee’s claims are within the scope of the arbitration clause in the Contract. Finally, the court erred in not fully addressing the validity of defenses and in failing to find that the arbitration clause is unenforceable, as a matter of law, because the Contract is one of adhesion and is unconscionable, either because the expense of arbitration is prohibitive or the consideration for the arbitration clause is inadequate. Appellants contend that, in order to resolve the above issues, the circuit court should have permitted discovery and conducted a trial, and it erred in failing to do so.
 

 In response, the Research Center contends that there are only two issues which this Court must address on appeal. First, whether the circuit court erred in ruling that the parties had entered into a valid and enforceable arbitration agreement, and second, whether the circuit court erred in ruling that the claims asserted by the Research Center fell within the scope of the arbitration clause.
 

 
 *33
 
 Discussion
 

 1. Is There An Agreement to Arbitrate
 

 In Maryland, there is “a strong legislative policy in favor of enforcing arbitration agreements.”
 
 NRT Mid-Atlantic, Inc. v. Innovative Properties, Inc.,
 
 144 Md.App. 263, 278, 797 A.2d 824 (2002). Nevertheless, in determining whether a binding agreement to arbitrate exists, the courts will examine traditional contract principles, because “a party cannot be required to submit any dispute to arbitration that it has not agreed to submit.”
 
 Cheek v. United Healthcare of the Mid-Atlantic, Inc.,
 
 378 Md. 139, 147, 835 A.2d 656 (2003)(quoting
 
 Curtis G. Testerman Co. v. Buck,
 
 340 Md. 569, 579, 667 A.2d 649 (1995)). Thus, when considering whether to stay or compel arbitration, the sole question before the court must be whether an agreement to arbitrate exists.
 
 Holmes v. Coverall North America, Inc.,
 
 336 Md. 534, 545, 649 A.2d 365 (1994)(citing
 
 Crown Oil v. Glen,
 
 320 Md. 546, 557, 578 A.2d 1184 (1990)).
 

 It is well-settled in Maryland that “an arbitration clause is a severable contract which is enforceable independently from the contract as a whole.”
 
 Holmes,
 
 336 Md. at 545, 649 A.2d 365. Moreover, the validity of an arbitration agreement is considered separately from any dispute over the merits of the contract itself.
 
 Id.
 
 Questions on the merits are for the arbitrator to decide.
 
 Id. See also Regina v. Envirmech,
 
 80 Md.App. 662, 674, 565 A.2d 693 (1989) (claim regarding the validity of a subcontract is for the arbitrator to decide);
 
 Security Construction, Co. v. Maietta, 25
 
 Md.App. 303, 307, 334 A.2d 133 (1975)(arguments regarding fraud in the inducement of the contract are for the arbitrator’s consideration).
 

 In a recent case, the Court of Appeals reiterated the very narrow role of the courts in determining questions of arbitrability.
 
 Cheek,
 
 378 Md. at 154, 835 A.2d 656. In
 
 Cheek,
 
 the Court was asked to determine whether consideration existed to support the agreement to arbitrate contained in Cheek’s employment contract.
 
 Id.
 
 In declining to delve into the merits of the underlying controversy, the Court reiterated
 
 *34
 
 that its sole purpose was to determine whether a valid arbitration agreement existed.
 
 Id.
 
 at 155, 835 A.2d 656. Once the court finds that a “mutual exchange of promises to arbitrate” exists, “its inquiry ceases, as the agreement to arbitrate has been established as a valid and enforceable contract.”
 
 Id.
 
 at 153-54, 835 A.2d 656 (quoting
 
 Holmes,
 
 336 Md. at 544, 649 A.2d 365).
 

 In the instant case, it is clear that a mutually agreed upon arbitration provision existed in the Contract. Appellants do not argue that a novation occurred or that there were any express modifications to this original agreement. Rather, appellants argue that the arbitration agreement in the Contract upon which the Research Center relies was no longer valid once they were terminated as employees on September 9, 2002. As explained in
 
 Holmes,
 
 this argument clearly goes to the merits of the contract as a whole and is a question for the arbitrator to decide. Appellants can raise this claim during arbitration, but as the circuit court noted, the Supreme Court has stated that it will presume “as a matter of contract interpretation that the parties did not intend a pivotal dispute resolution provision to terminate for all purposes upon the expiration of the agreement.”
 
 Litton Financial Printing Division v. NLRB,
 
 501 U.S. 190, 208, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991).
 

 2. Scope of the Arbitration Provision
 

 Appellants contend that the Research Center’s claims are outside the scope of the arbitration provision. Specifically, appellants argue that civil conspiracy, breach of contract, breach of fiduciary duty of loyalty, and unjust enrichment/ quantum meruit claims constitute independent torts or conduct and are not related to appellants’ employment contract with the Research Center. Because the arbitration provision mandates that only issues relating to or arising out of the Contract are arbitrable, appellants claim that the circuit court erred in finding that the Research Center’s claims fell within the scope of the arbitration provision.
 

 
 *35
 
 In addition to finding a binding arbitration agreement, a court must decide whether the claims at issue fall within the scope of that agreement.
 
 The Redemptorists v. Coulthard Services, Inc.,
 
 145 Md.App. 116, 135, 801 A.2d 1104 (2002).
 

 In determining the scope of an arbitration provision, a court must consider two competing aims. A court must resolve any doubts concerning the scope of arbitrable issues in favor of arbitration, reflecting a strong public policy in favor of arbitration. In doing so, however, the contract nature of arbitration must be respected, so as not to require a party to submit a dispute to arbitration that it has not agreed to arbitrate.
 

 Id.
 
 at 150-51, 801 A.2d 1104.
 

 In
 
 NRT Mid-Atlantic, Inc. v. Innovative Properties, Inc.,
 
 144 Md.App. 263, 797 A.2d 824 (2002), this Court had occasion to discuss the issue of scope related to an arbitration clause:
 

 In determining the scope of an arbitration clause, the court must find “reliable evidence from the language actually employed in the contract that the parties intended the disputed issue to be the subject of arbitration, the intent of the parties being the controlling factor.”
 
 Joseph F. Trionfo & Sons v. Ernest B. LaRosa & Sons, Inc.,
 
 [38 Md.App. 598, 605-06, 381 A.2d 727 (1978) ].
 

 When the language of an arbitration clause is plain and the issue in dispute clearly falls within its scope, the court must compel arbitration.
 
 Gold Coast Mall, Inc. v. Larmar Corp.,
 
 [298 Md. 96, 104, 468 A.2d 91 (1983) ];
 
 Bel Pre Med. Ctr. v. Frederick Contractors, Inc.,
 
 [21 Md.App. 307, 321, 320 A.2d 558 (1974) ]. Conversely, if there is an arbitration agreement but the issue in dispute plainly falls outside its scope, the court must deny a motion to compel arbitration.
 
 Gold Coast Mall, Inc. v. Larmar Corp., supra,
 
 298 Md. at 104 [468 A.2d 91];
 
 Contract Constr., Inc. v. Power Tech. Ctr. Ltd. Prtnrshp.,
 
 100 Md.App. 173, 178 [640 A.2d 251] (1994). When the parties have agreed to arbitrate, but the scope of the arbitration clause is ambiguous, so it is not evident
 
 *36
 
 whether their dispute is subject to arbitration, the arbitrator, not the court, must resolve the ambiguity:
 

 [T]he legislative policy in favor of the enforcement of agreements to arbitrate dictates that the question should be left to the decision of the arbitrator. Whether the party seeking arbitration is right or wrong is a question of contract application and interpretation for the arbitrator, not the court, ... and the court should not deprive the party seeking arbitration of the arbitrator’s skilled judgment by attempting to resolve the ambiguity.
 

 Bel Pre Med. Ctr. v. Frederick Contractors, Inc., supra,
 
 21 Md.App. at 321-22 [320 A.2d 558](citations omitted).
 
 See also Gold Coast Mall, Inc. v. Larmar Corp., supra,
 
 298 Md. at 107 [468 A.2d 91];
 
 Contract Constr., Inc. v. Power Tech. Ctr. Ltd. Prtnrshp., supra,
 
 100 Md.App. at 178 [640 A.2d 251],
 

 Id.
 
 at 280-81, 797 A.2d 824.
 

 In the instant case, the arbitration clause in the Contract provides that “[t]he parties agree that they will use their best efforts to amicably resolve any dispute arising out of or relating to this Agreement. Any controversy, claim or dispute that cannot be so resolved shall be settled by final binding arbitration in accordance with the rules of the American Arbitration Association____” This clause is clearly broader and more encompassing than the clause at issue in
 
 The Redemptorists,
 
 145 Md.App. at 151, 801 A.2d 1104 (providing only for arbitration of disputes relating to the “cause for termination”), or in
 
 NRT Mid-Atlantic,
 
 144 Md.App. at 281, 797 A.2d 824 (providing for arbitration of contractual disputes). The wording in the Contract unambiguously provides that all disputes arising out of or related to the Contract should be submitted to binding arbitration.
 

 Appellants concede that there is no ambiguity in this wording, and that all matters related to the Contract are arbitrable. Nevertheless, appellants argue that the Research Center’s arbitration claims are for separate torts or conduct not relat
 
 *37
 
 ing to the Contract and are thus outside the scope of the agreed upon arbitrable topics.
 

 Regarding the issue of scope, this Court has stated that “[wjhether a claim falls within the scope of an arbitration agreement turns on the factual allegations encompassed in the ... complaint ... rather than the legal causes of action asserted therein.”
 
 The Redemptorists,
 
 145 Md.App. at 151, 801 A.2d 1104. The claims raised by the Research Center are clearly related to appellants’ employment with the Research Center and arise out of the Contract: the conspiracy allegations are based on appellants’ allegedly misleading the Board of Directors and for obtaining wrongful termination and severance in accordance with provisions in the Contract; the breach of contract and breach of fiduciary duty claims are based specifically on portions of the Contract; and the unjust enrichment/quantum meruit claim arises from appellants’ allegedly obtaining wrongful severance, in accordance with the Contract, and failing to repay it. The factual allegations here are clearly within the scope of the arbitration clause in the Contract.
 

 Interestingly, the only claims before us are the Research Center’s demand for arbitration, appellants petition to stay such arbitration, and the Research Center’s responsive motion to compel arbitration. Unlike in
 
 NRT Mid-Atlantic
 
 and
 
 The Redemptorists,
 
 there is no suit pending on the merits of the claims. Thus, this is not a case where one party files suit, the adverse party responds seeking arbitration, and the court must determine whether there are claims pending which arguably should be stayed because they raise matters beyond the scope of the arbitration clause. Rather than asserting claims, appellants raise defenses which they contend must be decided by the court. To the extent addressable, the circuit court considered these defenses, which we shall discuss below, and found that the Research Center’s claims fell within the scope of the arbitration agreement. The circuit court’s decision was correct.
 

 
 *38
 
 3. Appellants’ Contract Defenses
 

 Finally, appellants contend that the Contract was one of adhesion and that it was unconscionable due to the expense of arbitration and want of consideration.
 
 [6]
 

 To the extent these defenses relate to the Contract as a whole, as explained earlier, they are proper issues for the arbitrator to decide.
 
 Holmes,
 
 336 Md. at 545, 649 A.2d 365. With regard to the issue of lack of consideration related solely to the arbitration clause itself, there was consideration because of the mutual agreement of the parties.
 
 See Cheek,
 
 378 Md. at 153, 835 A.2d 656 (“the mutual promises to arbitrate act as an independently enforceable contraet.”)(internal quotations omitted).
 
 [7]
 

 With regard to appellants’ arguments of adhesion and unconscionability due to expense, to the extent they are directed specifically at the arbitration provision, appellants failed to provide any support for these assertions. Moreover, there is nothing distinguishable about the arbitration provision as compared to the contract as a whole. Assuming discovery
 
 *39
 
 is available when an issue has been properly raised that goes to the existence of an arbitration clause specifically, the discovery has to relate to that purpose. The discovery requested by appellants goes to the merits of this case, was not directed at the validity of the arbitration provision specifically, and was, therefore, properly denied.
 

 Finally, with regard to appellants’ allegation that the arbitration provision was unconscionable because of excessive costs, appellants fail to cite any relevant case law in support of their argument. The cases they do cite involve unusual fee and expense provisions and deal with whether such arrangements interfere with the right to an adequate remedy.
 
 See, e.g., Etokie v. Carmax Auto Superstores, Inc.,
 
 133 F.Supp.2d 390 (D.Md.2000);
 
 Gilmer v. Interstate/Johnson Lane Corp.,
 
 500 U.S. 20, 28, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). Moreover, as the Research Center notes, appellants’ complaints are quite ironic, as one of the purposes of arbitration is to alleviate the costs of discovery and appellants request discovery while complaining about the costs of arbitration. The arbitration provision in the Contract provides for fee splitting, whereby each party bears its own costs and there is nothing unusual in this provision. Appellants’ defenses were properly considered and denied by the circuit court.
 

 JUDGMENT AFFIRMED.
 

 COSTS TO BE PAID BY APPELLANT.
 

 [1]
 

 . Mr. Nowak was hired on or about May 5, 1986, and was eventually promoted to Vice President of Contract Research and Division Director of the Policy and Technology Analysis Division. Mr. Dacquisto was hired on or about November 13, 1984, and was eventually promoted to Vice President of Technology Research. Mr. Zarker was hired on or about November 8, 1982, and was eventually promoted to Vice President of Marketing.
 

 [2]
 

 . Because the contracts are identical with regard to all operative issues in this case, we shall refer to all three of appellant’s employment agreements as "the Contract."
 

 [3]
 

 . Mr. Nowak received severance of $80,906.40; Mr. Zarker received $98,180.00; and Mr. Dacquisto received $89,697.60.
 

 [4]
 

 . The parties disagree over the history of their efforts to consolidate these arbitrations. Appellants claim the Research Center argued for three separate hearings, requiring nine arbitrators, despite the fact that each arbitration dealt with the same operative facts. The Research Center contends this is a misstatement of its position and that it, in fact, offered to consolidate the arbitrations early on in an effort to resolve this dispute. The Research Center contends that appellants rejected its consolidation proposal, stating they would only agree to arbitrate if the arbitration proceeded in front of one arbitrator, rather than three arbitrators, as required in the Contract. The Research Center rejected this proposal. The AAA rules do not permit consolidating cases unless the parties consent.
 

 [5]
 

 . The open motions were appellants’ petition to stay arbitration, the Research Center's petition to compel arbitration, appellants' motion for sanctions for failure to answer discovery, the Research Center's motion to dismiss appellants' petition to stay arbitration proceedings, and appellants’ motion to dismiss appellee’s counter petition to compel arbitration proceedings. The parties resolved an issue related to appellants' motion for a temporary stay of proceedings.
 

 [6]
 

 . Appellants also claim that the Contract does not comport with Md. Code (1974, 2002 Repl. Vol), § 3-206(b) of the Courts & Judicial Proceedings Article, which provides that the Arbitration Act "does not apply to an arbitration agreement between employers and employees or between their respective representatives unless it is expressly provided in the agreement that this subtitle shall apply.” This argument is without merit, however, as it is well-established that § 3-206(b) applies only in the context of collective bargaining agreements.
 
 Wilson v. McGrow, Pridgeon & Co., P.A.,
 
 298 Md. 66, 78-79, 467 A.2d 1025 (1983)("the legislative history of § 3—206(b) reflects that the primary purpose of that Maryland variation from the Uniform Arbitration Act was to exclude arbitration agreements in collective bargaining contracts from the Act... .We hold that § 3-206(b) of the Courts Article does not apply to an agreement to arbitrate included in an employment contract between an employer and a single employee.).
 

 [7]
 

 . The Court of Appeals held that the arbitration agreement in
 
 Cheek
 
 was unenforceable for want of consideration because the employer reserved the right to, within its sole discretion, alter, amend, modify, or revoke the arbitration agreement at any time without notice.
 
 Cheek,
 
 378 Md. at 149, 835 A.2d 656. Therefore, the court held that reservation of this right created "no real promise, and therefore, insufficient consideration to support an enforceable agreement to arbitrate."
 
 Id.